STATE OF VERMONT

| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 90-6-14 Vtec |
|---|---|
| Susan Lee Living Trust Permit<br>(Landscaping) | JUDGMENT ORDER |

On December 30, 2014 the Court held a site visit at the subject property, 38 Deerfield Drive in the Town of Waitsfield, Vermont, and a subsequent half-day merits hearing in this matter at the Vermont Superior Court, Civil Division Courthouse in Montpelier, Vermont. Appellant Michael Smith and Applicant Susan Lee were present at the site visit and trial and represented by Mark G. Hall, Esq. and Paul Gillies, Esq., respectively. The Town of Waitsfield was represented by Joseph McLean, Esq.

After all parties had a full opportunity to present evidence, the Court took a brief recess to review the evidence, conduct legal research, and deliberate. The Court thereafter reconvened the hearing and announced its Findings of Fact, Conclusions of Law, and Order. This Judgment Order is provided as a summary of those Findings and Conclusions and to satisfy the Court's obligation under Vermont Rule of Civil Procedure 58. To the extent the reader wishes to review the Court's Findings and Conclusions, the reader is referred to the audio record of the December 30, 2014 hearing.

**Summary of Findings of Fact**

1. Applicant owns a 1.06 acre lot located at 38 Deerfield Drive in the Town of Waitsfield, Vermont improved with a single family residence ("the structure").

2. Applicant's lot was created in 2005 as the result of a subdivision, which received municipal subdivision approval, with conditions. One such condition required DRB review and approval of a screening and landscaping plan to accommodate the proposed structure before granting final permit approval ("Condition 2").

1

3.      Seeking to construct a single-family home on the lot, Applicant applied for the necessary construction permits in 2011.  As required by Condition 2, Applicant and Appellant developed a screening and landscaping plan with the assistance of Ed Reed of the Mad River Garden Center based on the representation that the structure would not exceed 27 feet.  The DRB approved the screening and landscaping plan on September 24, 2011.  Pursuant to the approved plan, Applicant planted five evergreen trees of the spruce and fir variety in a staggered pattern along a 50-foot strip of land, parallel to the parties' common property boundary.  When planted, the trees were between 8 and 12 feet in height.

4.      In January 2012, Applicant sought to amend the permit to, among other things, authorize an increase of the maximum height of the structure from 27 feet to 32 feet; the DRB granted approval of the amended permit without indicating whether or not it approved the change in height.  Applicant built the structure, which measured 34 feet, 11 inches in height at the highest point.  As built, the structure lies roughly 15 feet to the right of where Appellant believed it would be located, based upon his understanding of the site plans Applicant submitted and the existence of red stakes indicating the building envelope.

5.      In April 2012, Applicant applied for a permit for the structure "as built," which measured just under 35 feet in height.  The permit was granted without DRB approval of a screening and landscaping plan specific to the 35 foot structure, as required by Condition 2.

6.      Appellants timely appealed that permit decision to this Court, which concluded that the Zoning Administrator did not have the authority to issue a permit for the 35 foot structure without prior approval of a screening and landscaping plan and remanded the matter back to the DRB.  In re Susan Lee Living Trust Corrective Permit, No. 94-7-12 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. Mar. 11, 2014) (Walsh, J.).

7.      In a ruling dated June 4, 2014, the DRB approved a screening and landscaping plan requiring that Applicant plant two additional trees, the location and species of which were required to be agreed to by both parties.  Appellants timely appealed that decision to this Court.

8. After 2 ½ years of existence on Applicant's lot, the spruce and fir trees measure approximately 15 feet in height. At this height, these trees do not screen the structure or provide privacy for Appellant's home.

9. Two of the trees are located to the left of the structure, when looking towards it from Appellant's property, and do not screen or obstruct views of the structure or provide privacy for Appellant's home.

10. To create more privacy, Appellant planted two hemlock trees on his property near the boundary between the properties. When planted, the hemlock trees measured 20 feet in height; after 2 ½ years, the hemlock trees measure 25 feet in height.

11. The hemlock trees on Appellant's property are fuller and provide more screening and privacy than the spruce and fir trees on Applicant's property.

12. There is an apple tree on Appellant's property, parallel to the parties' common boundary line and to the right when facing Applicant's residence; this apple tree is approximately 20 feet in height. When the apple tree has leaves, it provides significant screening of the structure and privacy for Appellant's home. The apple tree does not have leaves in the late fall, winter, and early spring months.

## Summary of Conclusions of Law

Prior rulings issued by this Court and the DRB that were not appealed have become final and cannot be challenged in this or future appeals. In the context of those rulings and this appeal, we find that the structure, as built, is without approval. Subject to Condition 2 of the subdivision permit, Applicant must obtain approval of a screening and landscaping plan for the structure as built before we can grant the permit for the building. In June 2014, the DRB approved of such a plan prior to granting approval of the structure as built. This Decision supplants that approval.

Section 3.3(j) of the Town of Waitsfield Subdivision Regulations states that "[t]he preservation, planting and maintenance of trees, ground cover or other vegetation, of a size and type deemed appropriate by the [DRB], may be required in the following instances," which include the provision of "screening of development to increase privacy, reduce glare, or to otherwise soften and/or lessen the undue adverse visual impacts of development."

3

Based on credible testimony, we conclude that Applicant's spruce and fir trees, as they exist, do not satisfy the requirements under § 3.3(j). As a primary matter, by its added height the structure is of a greater mass within Appellant's visibility, and this increased mass unduly impacts upon Appellant's privacy. Privacy is referenced specifically in Subdivision Regulations § 3.3(j). Because we find that it was reasonable for Appellants to understand, even if mistakenly, that the structure was to be located roughly 15 feet to the left than it exists as built, we conclude that the two spruce and fir trees located to the left of Applicant's property fail to provide any screening or privacy as located and are therefore insufficient. We also conclude that hemlock trees would provide more sufficient screening than the spruce and fir trees installed on Applicant's property, based on the heartiness and fullness of that variety, particularly when compared to the spruce and fir trees that presently exist.

Based on these conclusions, we order Applicant to plant three additional trees, subject to the following conditions:

1. The trees shall be of the hemlock variety;

2. The trees shall be spaced as designated by the red circles drawn on Exhibit I;

3. The trees shall be planted no closer than 10 feet from Applicant's basement wall;

4. The trees shall be at least 15 feet in height when planted;

5. Given Applicant's concerns about the potential for new trees to damage the existing spruce and fir trees, she may remove up to two of the existing spruce and fir trees with written certification from Ed Reed, or an equally qualified expert, filed with this Court, that the new hemlock trees are likely to damage or destroy specifically identified existing trees on her property.

In response to Applicant's Question of whether the Town of Waitsfield Subdivision Regulation's standard for screening and landscaping is standardless and therefore unenforceable, the Court answers in the negative. We conclude that § 3.3(j) provides sufficient standards when read within the context of the ordinance as a whole as well as when read with other ordinance provisions. We also find that § 3.3(j) provides sufficient standards for the explanation and definition of the term "adverse undue impact," a term of art used in land use regulation that has been approved by our Supreme Court.

4

In response to Applicant's Question of whether the DRB's condition from June 2014 requiring two additional trees should be struck or modified, the Court finds that, based on the specific findings and legal conclusions expressed here regarding the additional trees, the additional trees will provide necessary and sufficient screening as required by the ordinance.

In response to Applicant's Question of whether the height of the structure has any bearing on Appellant's privacy concerns and whether additional trees will make a material difference to these concerns, the Court finds that the height of the structure has bearing on Appellant's privacy concerns in that the additional 7 or 8 feet in height corresponds to an increase in the mass of the structure in direct view of Appellant's home, and that this increase in mass necessitates increased screening to provide adequate privacy and screening of the building for the immediate neighbors.

Finally, we also address Appellant's Question of whether the DRB's revised screening plan is adequate under the Town of Waitsfield Subdivision Regulations. In response, the Court finds that the revised plan, supplanted by the Findings and Conclusions within this Decision, will provide adequate screening under the ordinance.

Electronically signed on January 22, 2015 Burlington, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division